IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHERON RILEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MISER LOGISTICS, LLC, SUPER EGO LOGISTICS, LLC, DONALD D. HAMPTON, and CONCERT SPECIALTY INSURANCE COMPANY,<br><br>　　　　Defendants. | Civil Action No. _____<br><br>REMOVED FROM:<br>Superior Court of Macon County,<br>State of Georgia<br>Civil Action No.: 2026-SU-CV-0018 |

**CONCERT SPECIALTY INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS AND CROSS-CLAIMS FOR DECLARATORY
RELIEF**

COMES NOW Concert Specialty Insurance Company ("Concert") and

hereby responds as follows to Plaintiff's First Amended Complaint:

**FIRST DEFENSE**

Plaintiff's First Amended Complaint fails to state a claim against Concert

upon which relief may be granted.

**SECOND DEFENSE**

Plaintiff has failed to effectuate proper service of process upon Concert.

**THIRD DEFENSE**

Concert cannot be liable to Plaintiff for the relief sought in the First Amended Complaint because the commercial auto insurance policy (the "Policy") that Concert issued to Defendant Miser Logistics, LLC ("Miser") does not afford coverage for the Plaintiff's claims.

**FOURTH DEFENSE**

Concert cannot be liable to Plaintiff for any of the relief sought in the First Amended Complaint because the vehicle which was allegedly involved in the subject accident was not a covered "auto" under the Policy.

**FIFTH DEFENSE**

Concert cannot be liable to Plaintiff for any of the relief sought in the First Amended Complaint because none of the parties is an insured under the Policy with respect to the subject accident.

**SIXTH DEFENSE**

Any award of damages must be allocated to the person(s) at fault for causing those damages and Concert is not at fault for causing any damages to Plaintiff.

**SEVENTH DEFENSE**

The sole, direct and proximate cause of any injury or damage which Plaintiff may have sustained was due to acts or omissions of some other person, persons or entity other than Concert and therefore Plaintiff is not entitled to recover anything

2

from Concert.

## EIGHTH DEFENSE

Defendant Concert did not act willfully, wantonly, in bad faith, or with reckless disregard and, therefore, an award of punitive damages and/or attorneys' fees and expenses would not be warranted.

## NINTH DEFENSE

Responding to the individual allegations of the Complaint, Concert shows as follows:

1.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

2.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

3.

The allegations contained in paragraph 3 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent an answer is required, Concert is without knowledge or information sufficient to

3

form a belief as to the truth of the allegations contained in paragraph 3 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

4.

The allegations contained in paragraph 4 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent an answer is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

5.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

6.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

7.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

8.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

9.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

10.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

11.

The allegations contained in paragraph 11 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent an answer is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

12.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

13.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

14.

Denied, on information and belief.

15.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

16.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

17.

The allegations contained in paragraph 17 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent an answer is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

18.

Concert admits that it issued a commercial auto policy of insurance to Miser Logistics LLC as the named insured, Policy Number CS SPS 6998001-00, with a policy period from September 3, 2025 to September 3, 2026. Concert denies that Defendant Super Ego was insured by Concert.

19.

Concert admits that it is an insurance company with its principal place of business in the State of Illinois. Concert denies that it is organized under the laws of the State of Illinois. Concert further denies that it is "authorized" to transact business as an admitted carrier in the State of Georgia, and denies that its registered agent for service of process is Linda Banks, as alleged in paragraph 19 of the First Amended Complaint. Answering further, and for clarity, Concert states that it is surplus lines insurance carrier which is organized under the laws of the

State of Montana and issues policies in various states, including Georgia, on a surplus lines basis.

20.

The allegations contained in paragraph 20 of the First Amended Complaint constitute legal conclusions which require no response from Concert.

21.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

22.

To the extent that the term "Defendant" in paragraph 22 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 22 are denied. To the extent that the term "Defendant" in paragraph 22 refers to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

23.

To the extent that the term "Defendant" in paragraph 23 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 23

are denied. To the extent that the term "Defendant" in paragraph 23 refers to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

24.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

25.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

26.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

27.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

28.

The allegations contained in paragraph 28 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

29.

The allegations contained in paragraph 29 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

30.

Denied, upon information and belief.

31.

Denied, upon information and belief.

32.

Denied, upon information and belief.

33.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

34.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

35.

To the extent the term "Defendants" in paragraph 35 is intended to refer to Concert, the allegations in paragraph 35 of the First Amended Complaint are denied. To the extent the term "Defendants" in paragraph 35 is intended to refer to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

## COUNT 1 – NEGLIGENCE OF DONALD HAMPTON

36.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 35 of the First Amended Complaint, as if fully set forth herein.

37.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

38.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

39.

The allegations contained in paragraph 39 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

40.

The allegations contained in paragraph 40 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

41.

The allegations contained in paragraph 41 of the First Amended Complaint, including sub-paragraphs a. through f. thereof, constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

42.

The allegations contained in paragraph 42 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, the allegations in paragraph 42 are denied.

## NEGLIGENCE OF MISER LOGISTICS, LLC

43.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 42 of the First Amended Complaint, as if fully set forth herein.

44.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

45.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

46.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

47.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

48.

The allegations contained in paragraph 48 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, the Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

49.

Denied, on information and belief.

**NEGLIGENCE OF SUPER EGO LOGISTICS, LLC**

50.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 49 of the First Amended Complaint, as if fully set forth herein.

15

51.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

52.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

53.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

54.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

55.

The allegations contained in paragraph 55 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 55 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

56.

Denied, upon information and belief.

## NEGLIGENT HIRING, TRAINING, RETENTION, ENTRUSTMENT & SUPERVISION

57.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 56 of the First Amended Complaint, as if fully set forth herein.

58.

The allegations contained in paragraph 58 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

59.

The allegations contained in paragraph 59 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 59 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

60.

The allegations contained in paragraph 60 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

61.

The allegations contained in paragraph 61 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

62.

The allegations contained in paragraph 62 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

63.

The allegations contained in paragraph 63 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

## DIRECT ACTION

64.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 63 of the First Amended Complaint, as if fully set forth herein.

65.

The allegations contained in paragraph 65 of the First Amended Complaint constitute legal conclusions which require no response from Concert. To the extent a response is required, Concert denies that it is the insurer for Super Ego. Concert admits that it issued the Policy to Miser, but denies that the Policy provides coverage for the subject accident and denies that Concert is properly the subject of a direct action claim.

66.

The allegations contained in paragraph 66 of the First Amended Complaint set forth Plaintiffs' characterization of a statute and constitute legal conclusions which require no response from Concert.

67.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

68.

Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

69.

The allegations contained in paragraph 69 of the First Amended Complaint set forth Plaintiffs' characterization of a statute and constitute legal conclusions which require no response from Concert. To the extent a response is required, the allegations in paragraph 69 are denied.

**ATTORNEYS FEES**

70.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 69 of the First Amended Complaint, as if fully set forth herein.

71.

The allegations contained in paragraph 71 of the First Amended Complaint set forth Plaintiffs' characterization of a statute and constitute legal conclusions which require no response from Concert. To the extent a response is required, the allegations in paragraph 71 are denied.

**DAMAGES**

72.

Concert realleges and incorporates by reference the responses it provided to paragraphs 1 through 71 of the First Amended Complaint, as if fully set forth herein.

73.

To the extent the term "Defendants" in paragraph 73 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 73 are denied. To the extent the term "Defendants" is intended to refer to Defendants other than Concert, Concert is without knowledge or information sufficient to form

21

a belief as to the truth of the allegations contained in paragraph 73 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

74.

To the extent the term "Defendants" in paragraph 74 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 74 of the First Amended Complaint are denied. To the extent the term "Defendants" is intended to refer to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

75.

To the extent the term "Defendants" in paragraph 75 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 75 are denied. To the extent the term "Defendants" is intended to refer to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

76.

To the extent the term "Defendants" in paragraph 76 of the First Amended Complaint is intended to refer to Concert, the allegations in paragraph 76 are

denied. To the extent the term "Defendants" is intended to refer to Defendants other than Concert, Concert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the First Amended Complaint and, therefore, can neither admit nor deny the allegations.

77.

Denied.

In response to the un-numbered prayer for relief set forth in the First Amended Complaint, Concert denies that Plaintiff is entitled to recover the relief sought.

Any allegation which has not heretofore been specifically admitted or denied is hereby denied.

WHEREFORE, having fully responded to Plaintiff's First Amended Complaint, Concert prays that it be dismissed hence without liability, with all costs cast against Plaintiff.

## **COUNTERCLAIM AND CROSS-CLAIMS FOR DECLARATORY RELIEF**

Concert, by and through its undersigned counsel, asserts the following Counterclaim for declaratory relief against Plaintiff and Cross-Claims for declaratory relief against Defendants Miser and Donald Hampton:

1.

Concert asserts its Counterclaim and Cross-Claims seeking a declaratory judgment concerning Concert's obligations under a policy of insurance it issued to Miser. An actual controversy exists between the parties in this regard, and the Court has the power to declare the rights and obligations of the parties with respect to the subject insurance policy pursuant to O.C.G.A. § 9-4-1 *et seq.* and/or 28 U.S.C. §§ 2201-2202.

2.

Plaintiff has filed the instant lawsuit (the "Action") arising from a motor vehicle accident that occurred on November 3, 2025 in Henry County, Georgia (the "Accident").

3.

Plaintiff's First Amended Complaint alleges that the Accident occurred as a result of negligence by Defendant Donald Hampton in operating a motor vehicle.

4.

Plaintiff's First Amended Complaint alleges that at the time of the Accident, Hampton was operating a vehicle owned by Miser and was in the scope of employment or agency with Miser.

5.

Plaintiff's First Amended Complaint also alleges that at the time of the Accident, Hampton was operating a vehicle owned by Super Ego and was in the scope of employment or agency with Super Ego.

6.

Plaintiff's First Amended Complaint alleges that he was injured in the Accident and seeks to recover from Hampton, Miser and Super Ego for his injuries.

7.

Plaintiff's First Amended Complaint alleges that Concert is subject to a direct action claim as Miser's insurer.

8.

Concert asserts its Counterclaim and Cross-Claims seeking a declaration that the Policy it issued to Miser does not provide coverage for the Accident, as the vehicle involved in the Accident was not a covered "auto" and none of the involved parties is an "insured" with respect to the Accident.

**The Policy**

9.

Concert issued the Policy, which is a commercial auto policy of insurance with a Policy Number of CS SPS 6998001-00 and a policy period from September 3, 2025 to September 3, 2026, to Miser Logistics LLC as the named insured.

10.

A true and accurate copy of the Policy (with premium information redacted) is attached hereto at **Exhibit A**.

11.

The Policy's Declarations reflect that it was issued to Miser at an address of 7840 Tyler Blvd. Unit 1502, Mentor, OH 44060.

12.

The Policy provides coverage through a Motor Carrier Coverage Form, form CA 00 20 11 20 (the "Motor Carrier Coverage Form").

13.

SECTION I – COVERED AUTOS of the Motor Carrier Coverage Form provides, in relevant part, as follows:

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the

Declarations designate the only "autos" that are covered "autos".

**A.    Description of Covered Auto Designation Symbols**

| Symbol | | Description of Covered Auto Designation |
|---|---|---|
| . . . | . . . | |
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item |

14.

Item Two of the Policy's Declarations sets forth a Schedule Of Coverages And Covered Autos. Item Two of the Declarations provides, in relevant part, as follows:

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This Policy provides only those coverages where a charge is shown in the premium column below, Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Motor Carrier Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos | Limit Or Deductible | Premium |
|---|---|---|---|
| Covered Autos Liability | 67 | $1,000,000 | [omitted] |

15.

The Policy's Declarations include a Schedule of Covered Autos, which lists 6 vehicles.

16.

Upon information and belief, the vehicle involved in the Accident was a 2023 International Transtar truck, VIN 3HSDZAPR7PN764194 (the "Vehicle"), with an attached trailer (the "Trailer").

17.

None of the vehicles set forth in the Schedule of Covered Autos in the Policy's Declarations is the Vehicle or the Trailer.

18.

The Policy's Declarations Include a Driver Information list, which lists 6 drivers.

19.

None of the drivers set forth in the Driver Information list in the Policy's Declarations is Donald Hampton.

20.

A Policy Change endorsement was issued with respect to the Policy, Policy Change Number 8, with a stated effective date of November 4, 2025 (the "Change Endorsement").

21.

A true and accurate copy of the Change Endorsement is attached hereto at **Exhibit B**.

22.

The Change Endorsement states that "Driver Donald Hampton is added to the policy."

23.

The Change Endorsement states that "Unit 2023, LT62F 3HSDZAPR7PN764194 has been added to the Policy."

24.

The Change Endorsement's stated effective date, November 4, 2025, was the day after the Accident, which occurred on November 3, 2025.

25.

Neither the Vehicle nor Mr. Hampton was scheduled on the Policy on the date of the Accident, November 3, 2025.

26.

SECTION II – COVERED AUTOS LIABILITY COVERAGE of the Policy's Motor Carrier Coverage Form provides, in relevant part, as follows:

**SECTION    II    –    COVERED    AUTOS    LIABILITY COVERAGE**

      **A.    Coverage**

29

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . .

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

### 1.    Who Is an Insured

The following are "insureds":

a.    You for any covered "auto".

b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

27.

At the time of the Accident, the involved Vehicle was not an "auto" described in the Declarations and therefore was not a covered "auto" under the Policy.

28.

Because the Vehicle was not a covered "auto," the Accident did not result from the ownership, maintenance or use of a covered "auto" and the Policy's Covered Autos Liability Coverage does not apply to the Plaintiff's claims.

30

29.

Because the Vehicle was not a covered "auto," neither Miser nor any of the other Defendants is an "insured" under the Policy with respect to the Accident.

30.

The Policy contains a Punitive Damages Exclusion endorsement, form CA 21 71 01 88, which states that "This insurance does not apply to punitive or exemplary damages."

31.

Because the Policy does not provide coverage for punitive damages, any punitive damage award entered in the Action would not be covered for this additional reason.

32.

A Form MCS-90 is attached to the Policy, Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980 (the "MCS-90"). The MCS-90 states that it was issued to Miser Logistics LLC and sets forth a limit of $750,000.

33.

The MCS-90 provides, in part, that:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability

resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 . . . .

34.

Any obligation that could be imposed by the MCS-90 is in the nature of a suretyship and may arise, if at all, only if a final judgment is recovered against Miser for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.

35.

The MCS-90 imposes no present obligations upon Concert, and does not impose any duty upon Concert to provide any party with a defense or indemnity for the Plaintiff's claims.

## COUNT I
## Counterclaim For Declaratory Relief
### (Against Plaintiff)

36.

Concert incorporates and re-alleges Paragraphs 1 through 35 above as though fully set forth herein.

37.

The Vehicle was not a covered "auto" at the time of the Accident.

38.

Because the Vehicle was not a covered "auto," the Accident did not result from the ownership, maintenance or use of a covered "auto."

39.

Because the Accident did not result from the ownership, maintenance or use of a covered "auto," the Policy's Covered Autos Liability Coverage does not apply to the Plaintiff's claims.

40.

Because the Vehicle was not a covered "auto" at the time of the Accident, none of the parties is an "insured" under the Policy with respect to the Accident.

41.

Concert has no duty to provide any party with a defense or indemnity under the Policy with respect to the Plaintiff's claims.

42.

Upon information and belief, Plaintiff contends that there is coverage under the Policy for his claims.

43.

Concert is entitled to a declaration that the Policy does not provide coverage for the Plaintiff's claims.

## COUNT II
## Cross-Claim For Declaratory Relief
## (Against Miser)

44.

Concert incorporates and re-alleges Paragraphs 1 through 43 above as though fully set forth herein.

45.

The Vehicle was not a covered "auto" at the time of the Accident.

45.

Because the Vehicle was not a covered "auto," the Accident did not result from the ownership, maintenance or use of a covered "auto."

46.

Because the Accident did not result from the ownership, maintenance or use of a covered "auto," the Policy's Covered Autos Liability Coverage does not apply to the Plaintiff's claims.

47.

Because the Vehicle was not a covered "auto" at the time of the Accident, Miser is not an "insured" under the Policy with respect to the Accident.

48.

Concert has no duty to provide a defense to Miser with respect to the Action.

34

49.

Concert has no duty to indemnify Miser for any damages that may be awarded against it in the Action.

50.

Upon information and belief, Plaintiff and/or Miser contends that the Policy provides coverage to Miser for the Plaintiff's claims.

51.

Concert is entitled to a declaration that the Policy does not provide coverage to Miser for the Plaintiff's claims.

## COUNT III
## Cross-Claim For Declaratory Relief
## (Against Donald Hampton)

52.

Concert incorporates and re-alleges Paragraphs 1 through 51 above as though fully set forth herein.

53.

The Vehicle was not a covered "auto" at the time of the Accident.

54.

Because the Vehicle was not a covered "auto," the Accident did not result from the ownership, maintenance or use of a covered "auto."

35

55.

Because the Accident did not result from the ownership, maintenance or use of a covered "auto," the Policy's Covered Autos Liability Coverage does not apply to the Plaintiff's claims.

56.

Because the Vehicle was not a covered "auto" at the time of the Accident, Donald Hampton is not an "insured" under the Policy with respect to the Accident.

57.

Concert has no duty to provide a defense to Donald Hampton with respect to the Action.

58.

Concert has no duty to indemnify Donald Hampton for any damages that may be awarded against him in the Action.

59.

Upon information and belief, Plaintiff and/or Mr. Hampton contend that the Policy provides coverage to Mr. Hampton for the Plaintiff's claims.

60.

Concert is entitled to a declaration that the Policy does not provide coverage to Mr. Hampton for the Plaintiff's claims.

WHEREFORE, Concert Specialty Insurance Company respectfully requests that the Court determine the parties' rights and obligations under the Policy and enter a judgment:

A. Declaring that the Policy does not provide coverage for the Plaintiff's claims because the Vehicle involved in the Accident was not a covered "auto";

B. Declaring that the Policy does not provide coverage for the Plaintiff's claims because none of the parties is an "insured" with respect to the Accident;

C. Declaring that Concert has no duty to defend Miser in the Action;

D. Declaring that Concert has no duty to defend Donald Hampton in the Action;

E. Declaring that Concert has no duty to indemnify Miser for any judgment that may be entered against it in the Action;

F. Declaring that Concert has no duty to indemnify Donald Hampton for any judgment that may be entered against him in the Action; and

G. Granting such other and further relief in favor of Concert as the Court may deem just and appropriate.

This the 5ᵗʰ day of June, 2026.

MCANGUS GOUDELOCK & COURIE, LLC

W. JASON PETTUS (GA Bar No. 140852)
Jason.Pettus@mgclaw.com
Post Office Box 57365
270 Peachtree Street, NW, Suite 1800
(30303)
Atlanta, Georgia 30343
(678) 510-1687
*Attorney for Concert Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the following

counsel of record via electronic mail notification:

John K. Schultz
Brian W. Craig
Wood Craig Miller
3520 Piedmont Rd N.E. Suite 280
Atlanta GA 30305
john@woodcraig.com
brian@woodcraig.com
*Attorneys for Plaintiff*

This the 5ᵗʰ day of June, 2026.

MCANGUS  GOUDELOCK  &  COURIE, LLC


W. JASON PETTUS (GA Bar No. 140852)
Jason.Pettus@mgclaw.com
Post Office Box 57365
270 Peachtree Street, NW, Suite 1800 (30303)
Atlanta, Georgia 30343
(678) 510-1687
*Attorney for Concert Specialty Insurance Company*

# **EXHIBIT A**

POLICY



**Specialized Program Solutions LLC**

**267 Main St.**

**Chester, NJ 07930**

Ohio State Stamp Wording

THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION.

# CONCERT-SPS TRUCKING PROGRAM

# ATHENS CLAIM REPORTING PROCEDURES

All claims regardless of severity or location should be reported. The Athens Administrators Claims Intake Center is ready to accept new losses and provides multiple ways for you to submit new loss reports:

**E-mail:** concertspstrucking@athensadmin.com

**FAX:** (916) 384-0965

**Telephone**: 1-888-534-6375

**Mail:**  Athens Insurance Services, Inc.
P. O. Box 4111
Concord, CA 94524

Notices that do not require action ("incident reports") should be clearly marked **"REPORT ONLY".**

The Athens Claims Intake Center will review all claims notices upon receipt and assign to the handling clams office. A claim acknowledgement will then be transmitted to the designated individual advising of the Athens claim number and adjuster assigned to the claim.

*If after hours-emergency claims service is required, please advise the call center agent who will advise Athens to dispatch an on-site adjuster.

POLICY NUMBER: CS SPS 6998001-00                                        **COMMERCIAL AUTO**
                                                                              **CA DS 211120**

# MOTOR CARRIER DECLARATIONS

**ITEM ONE**

| |
|---|
| **Company Name:** Concert Specialty Insurance Company - 17001 Golf Road, Suite 1-1110 Rolling Meadows, IL 60008 |
| **Producer Name:** Titan Risk Solutions 267 Main St. , Chester, NJ 07930 |
| **Named Insured:** MISER LOGISTICS LLC |
| **Mailing Address:** 7840 TYLER BLVD UNIT 1502 , MENTOR,OH 44060 |
| **Physical Address:** 7840 TYLER BLVD UNIT 1502 , MENTOR,OH 44060 |

| Policy Period | |
|---|---|
| **From:** Sep 3, 2025 | |
| **To:** Sep 3, 2026 | At 12:01 AM Standard Time at your mailing address shown above |

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

| |
|---|
| **Premium Shown Is Payable At Inception** ▮▮▮▮▮▮ |
| **Audit Period** (if applicable):  ☐ **Annually**   ☐ **Semiannually**   ☐ **Quarterly**   ☐ **Monthly** |

| Endorsements Attached To This Policy |
|---|
| **IL 0017** – Common Policy Conditions (**IL 0146** in Washington) <br> **IL 0021** – Broad Form Nuclear Exclusion (not applicable in New York) (**IL 0198** in Washington) |

**CA DS 211120**

**ITEM ONE** (Cont'd)

| Countersignature Of Authorized Representative |
|---|
| **Name: Christopher D. Daggett** |
| **Title: President** |
| **Signature:** |
| **Date:** 2025-09-02 |

Note

Officers' facsimile signatures may be inserted here, on the Policy cover or elsewhere at the company's option.

Tax, Surcharge, Fee or Assessment Schedule

| Description | | Amount |
|---|---|---|
| Technology Fee* | | |
| Underwriting Fee | | |
| Safety Advisor Fee* | | |
| SL Tax | | |
| | | |
| **Total** | | |

*denotes fully earned fee

**Surplus Lines Broker:** Specialized Program Solutions
**Broker Address:** 267 Main St. Chester, NJ 07930
**License #**1465266

**CA DS 211120**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This Policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Motor Carrier Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos | Limit Or Deductible | Premium |
|---|---|---|---|
| **Covered Autos Liability** | 67 | **$1,000,000** | ██████████ |
| **Personal Injury Protection (Or Equivalent No-fault Coverage)** | | **Separately Stated In Each Personal Injury Protection Endorsement Minus** **Limit** | $ Not Covered |
| **Added Personal Injury Protection (Or Equivalent Added No-fault Coverage)** | | **Separately Stated In Each Added Personal Injury Protection Endorsement** | **$ NOT COVERED** |
| **Property Protection Insurance (Michigan Only)** | | **Separately Stated In The Property Protection Insurance Endorsement Minus** **$ Deductible For Each Accident** | **$ NOT COVERED** |
| **Auto Medical Payments** | | **$ Each Insured** | **$ NOT COVERED** |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | | **Separately Stated In The Medical Expense And Income Loss Benefits Endorsement** | **$ NOT COVERED** |
| **Uninsured Motorists** | X | $50,000.00 **Limit** | ██████████ |
| **Underinsured Motorists (When Not Included In Uninsured Motorists Coverage)** | | **$** | **$** |

**CA DS 21 11 20**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos** (Cont'd)

| Coverages | Covered Autos | Limit Or Deductible | Premium |
|---|---|---|---|
| **Trailer Interchange Comprehensive Coverage** | | **Least Of Actual Cash Value, Cost Of Repair Or** <br> **$      Limit Of Insurance** <br> **$      Deductible For Each Covered Trailer** | **$ NOT COVERED** |
| **Trailer Interchange Specified Causes Of Loss Coverage** | | **Least Of Actual Cash Value, Cost Of Repair Or** <br> **$      Limit Of Insurance** <br> **$      Deductible For Each Covered Trailer** | **$ NOT COVERED** |
| **Trailer Interchange Collision Coverage** | | **Least Of Actual Cash Value, Cost Of Repair Or** <br> **$      Limit Of Insurance** <br> **$      Deductible For Each Covered Trailer** | **$ NOT COVERED** |
| **Physical Damage Comprehensive Coverage** | | **$      Deductible** <br> **For Each Covered Auto For Loss Caused By Theft Or Mischief Or Vandalism** <br> (A maximum deductible may also apply. Refer to Coverage Form for details.) <br><br> **OR** <br> **$      Deductible** <br> **For All Perils For Each Covered Auto** <br> (A maximum deductible may also apply. Refer to Coverage Form for details.) <br> See Item Four for Hired or Borrowed Autos. | **$ NOT COVERED** |

**CA DS 21 11 20**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos** (Cont'd)

| | | | |
|---|---|---|---|
| **Physical Damage Specified Causes Of Loss Coverage** | | | **$ NOT COVERED** |
| | | $                   **Deductible** | |
| | | **For Each Covered Auto For Loss Caused By Theft Or Mischief Or Vandalism** (A maximum deductible may also apply. Refer to Coverage Form for details.) <br><br> **OR** <br> $             **Deductible** <br> **For All Perils For Each Covered Auto** (A maximum deductible may also apply. Refer to Coverage Form for details.) <br> See Item Four for Hired or Borrowed Autos. | |
| **Physical Damage Collision Coverage** | | $            **Deductible For Each Covered Auto** <br><br> See Item Four for Hired or Borrowed Autos. | **$ NOT COVERED** |
| **Physical Damage Towing And Labor** | | $          **For Each Disablement Of A Private Passenger Auto, Light or Medium Truck** | **$ NOT COVERED** |
| | | | $ |
| | | **Premium For Endorsements** | $ |
| | | **Coverage Premium*** | ▮▮▮▮▮▮ |
| *This Policy may be subject to final audit. | | | |

| Commodities | % of Loads |
|---|---|
| Any & All Dry Goods | Dry: 100 |

**CA DS 21 11 20**

| DRIVER INFORMATION |
|---|

| Driver's Name | Date of Birth | Driver's License No. | State | No. of Years Driving Similar Vehicle | Date ofHire | Included Driver |
|---|---|---|---|---|---|---|
| Imina Craig | ███ | ███ | OH | 2023-1-11 | 2023-9-6 | Yes |
| David Peeples | | | OH | 2023-5-15 | 2024-9-1 | Yes |
| Michael Mcdaniel | | | OH | 2006-8-11 | 2023-4-6 | Yes |
| Darin Thomas | | | OH | 2017-10-25 | 2024-7-19 | Yes |
| Adrian Brooks | | | OH | 2004-11-3 | 2024-1-6 | Yes |
| John Juarwel | ███ | ███ | OH | 2018-7-10 | 2023-3-9 | Yes |

| SCHEDULE OF COVERED AUTOS |
|---|

**The following is a listing of all covered autos under this policy. Any changes during the policy period should be reported to your agent as soon as possible to add, amend or delete coverage to your policy.**

| No. | Year | Make/ Model | VIN Number | GVW |
|---|---|---|---|---|
| 1 | 2022 | KENWORTH T680 | 1XKYDP9X4NJ102438 | 33001 |
| 2 | 2024 | FREIGHTLINER Cascadia | 3AKJHHDV3RSUZ3277 | 33001 |
| 3 | 2026 | VOLVO TRUCK NEW VNL | 4V4BC9EH6TN697723 | 33001 |
| 4 | 2026 | FREIGHTLINER Cascadia | 3AKJHHDR4TSWR3241 | 33001 |
| 5 | 2023 | PETERBILT 579 | 1XPBDP9X7PD825430 | 33001 |
| 6 | 2023 | FREIGHTLINER Cascadia | 3AKJHHDV8PSUG8982 | 33001 |

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**COMMERCIAL AUTO**
**CA 00 20 11 20**

# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** –Definitions.

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **61** | Any "Auto" | |
| **62** | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **63** | Owned Private Passenger Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| **64** | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| **65** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| **66** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **67** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **68** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| **69** | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **70** | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol **70** is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |

| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
|---|---|---|
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **61, 62, 63, 64, 65, 66** or **79** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **67** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

      (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

**d.** The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

**e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**(1)** Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

**(a)** If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

**(b)** If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

However, Paragraph **(1)** above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

**(2)** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

**(a)** Is being transported by the carrier; or

**(b)** Is being loaded on or unloaded from any unit of transportation by the carrier.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident"

we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of "loss" because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. **Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of "your work" after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**SECTION III – TRAILER INTERCHANGE COVERAGE**

**A. Coverage**

**1.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The "trailer's" collision with another object; or

**(2)** The "trailer's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

**c. Collision Coverage**

Caused by:

**(1)** The "trailer's" collision with another object; or

**(2)** The "trailer's" overturn.

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. Coverage Extensions**

The following apply as **Supplementary Payments.** We will pay for you:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**c.** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

**d.** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for loss of use.

**3. Other Exclusions**

We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**C. Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

**1.** The actual cash value of the damaged or stolen property at the time of the "loss";

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**3.** The Limit Of Insurance shown in the Declarations.

**D. Deductible**

For each covered "trailer", our obligation to pay:

**1.** The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations.

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

**3.** The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations.

**SECTION IV – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing – Private Passenger Type Autos**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extension**

**a. Transportation Expenses**

We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

**a.** Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

**b.** Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**c.** Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**d.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**e.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**f.** Any accessories used with the electronic equipment described in Paragraph **e.** above.

**3.** Exclusions **2.e.** and **2.f.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

d. Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

4. We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

a. "Loss" to any one covered "auto" is the lesser of:

(1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

(2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

(2) Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

(3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V – MOTOR CARRIER CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. Loss Conditions

1. **Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

  (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

  (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

  (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

  (4) Agree to examination under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**

   No one may bring a legal action against us under this Coverage Form until:

   a. There has been full compliance with all the terms of this Coverage Form; and

   b. Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **Loss Payment – Physical Damage Coverages**

   At our option, we may:

   a. Pay for, repair or replace damaged or stolen property;

   b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

   c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

   If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**

   If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

   This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

   a. This Coverage Form;

   b. The covered "auto";

   c. Your interest in the covered "auto"; or

   d. A claim under this Coverage Form.

3. **Liberalization**

   If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee – Physical Damage Coverages**

   We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance – Primary And Excess Insurance Provisions**

   a. While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

     (1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

     (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

   b. While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

     (1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

     (2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

   **(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

   **(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a.**, **b.**, **c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a.**, **b.**, **c.**, **d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**h.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

   **(1)** The United States of America;

   **(2)** The territories and possessions of the United States of America;

   **(3)** Puerto Rico;

   **(4)** Canada; and

   **(5)** Anywhere in the world if a covered "auto" of the "private passenger type" is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION VI – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

   **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

   **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

   **1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

**6.** That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section **II,** Paragraph **A.1.d.** of the Who Is An Insured provision.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

CA 00 20 10 13

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **a.** Power cranes, shovels, loaders, diggers or drills; or

  **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

  **b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **a.** Equipment designed primarily for:

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

  **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**N.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**O.** "Property damage" means damage to or loss of use of tangible property.

**P.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense", to

which this insurance applies, are alleged. "Suit"

includes:

  **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**Q.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**R.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

**S.** "Unmanned aircraft" means an aircraft that is not:

  **a.** Designed;

  **b.** Manufactured; or

  **c.** Modified after manufacture;

  to be controlled directly by a person from within or on the aircraft.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

    (1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1)  The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    (2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3)  The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

- **(a)** Any "nuclear reactor";
- **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

- **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
- **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**COMMERCIAL AUTO**
**CA 23 37 01 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR, MILITARY ACTION AND TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

The **War** Exclusion under **Section II – Liability Coverage** is replaced by the following:

**WAR, MILITARY ACTION AND TERRORISM**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**d.** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism";

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

**c.** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**d.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**CA 23 37 01 02**            © ISO Properties, Inc.,  2002            **Page 1 of 6**            □

**e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(a)** and **(b),** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B. Changes In Physical Damage And Trailer Interchange Coverages**

The **War Or Military Action** Exclusion under the Trailer Interchange Coverage Section of the Motor Carrier Coverage Form, Truckers Coverage Form and Truckers endorsement, if attached, and the **War Or Military Action** Exclusion under the Physical Damage Coverage Section of all Coverage Forms are replaced by the following:

**WAR, MILITARY ACTION AND TERRORISM**

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism".

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(3)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraph **(1),** immediately preceding, describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

© ISO Properties, Inc.,  2002  **CA 23 37 01 02**  ☐

**C. Changes In Garagekeepers Coverage**

If the Garagekeepers Coverage endorsement or Garagekeepers Coverage – Customers' Sound Receiving Equipment endorsement are attached, the following exclusion is added:

**WAR, MILITARY ACTION AND TERRORISM**

We will not pay for "loss" caused by or resulting from the following. Such "loss" or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism".

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(3)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraph **(1),** immediately preceding, describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**D. Changes In Auto Medical Payments**

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

**6.** "Bodily injury" arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**d.** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism";

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

**c.** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**d.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **a.** and **b.,** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**E.** If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

**WAR, MILITARY ACTION AND TERRORISM**

"Bodily injury" or "property damage", if applicable, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**d.** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

© ISO Properties, Inc.,  2002    CA 23 37 01 02    ☐

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

**c.** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**d.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **a.** and **b.,** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**F. Changes In Personal Injury Protection Coverage**

**1.** If Personal Injury Protection, no-fault, or other similar coverage is attached, and:

**a.** Contains, in whole or in part, a War exclusion, that exclusion is replaced by Paragraph **2.**

**b.** Does not contain a War exclusion, Paragraph **2.** is added.

**2.** This insurance does not apply to:

**WAR, MILITARY ACTION AND TERRORISM**

"Bodily injury" arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**d.** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

**c.** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**d.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**CA 23 37 01 02**    © ISO Properties, Inc., 2002    **Page 5 of 6**    ☐

Paragraphs **a.** and **b.,** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**G.** The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

    **a.** Use or threat of force or violence; or

    **b.** Commission or threat of a dangerous act; or

    **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

    **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 © ISO Properties, Inc., 2002 **CA 23 37 01 02** ☐

**COMMERCIAL AUTO**
**CA 99 48 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this Insurance or any endorsement thereto it is agreed that this Insurance excludes liability for Loss, directly or indirectly caused by, resulting from or in connection with the Insured's use of or reliance upon or sale or supply of any computer hardware or related Information Technology or communication system, any computer software, Internet, Intranet, Website or similar facility, system or network and/or any electronic data or related information

PROVIDED THAT

this endorsement shall not exclude claims for personal injuries caused by an accident involving physical contact with computer hardware.

"Loss" in this endorsement shall include (but shall not be limited to) injury, loss, damage, cost or expense of whatsoever nature including consequential and pure financial loss, and loss of, damage to, deterioration or corruption (whether permanent or temporary) or loss of use of any computer hardware or related Information Technology or communication system, any computer software, Internet, Intranet, Website or similar facility, system or network and/or any electronic data and related information.

If the Underwriters maintain that by reason of this endorsement any Loss is not covered by this Insurance, the burden of proving the contrary shall be upon the Insured.

If any part of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

COMMERCIAL AUTO
CA 23 84 01 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

CA 23 84 01 06                    © ISO Properties, Inc., 2004                    **Page 1 of 3**                    □

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

    © ISO Properties, Inc., 2004     **CA 23 84 01 06**    ☐

With respect to this Exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

COMMERCIAL AUTO
CA 23 57 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined in any applicable Coverage Form or endorsement, arising directly or indirectly out of "a certified act of terrorism".

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, such as losses excluded by a Nuclear Hazard Exclusion or a War Or Military Action Exclusion.

CA 23 57 12 02                    © ISO Properties, Inc.,  2002                    **Page 1 of 1**

**COMMERCIAL AUTO
CA 23 60 12 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM; AND OTHER NUCLEAR, BIOLOGICAL OR CHEMICAL ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "bodily injury", "property damage", "personal injury, "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined in any applicable Coverage Form or endorsement, arising directly or indirectly out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**CA 23 60 12 02**                    © ISO Properties, Inc.,  2002                    **Page 1 of 2**          ☐

**2.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense" that is otherwise excluded under this Coverage Form or any applicable endorsement.

© ISO Properties, Inc.,  2002

**CA 23 60 12 02**   ☐

**COMMERCIAL AUTO**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO LIABILITY COVERAGE
UNINSURED MOTORISTS COVERAGE
UNDERINSURED MOTORISTS COVERAGE

The following is added to Exclusions:

This insurance does not apply to punitive or exemplary damages.

**CA 21 71 01 88**          Copyright, Insurance Services Office, Inc.,  1987, 1991          **Page 1 of 1**   □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BROKERAGE EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the MOTOR CARRIER COVERAGE FORM.

The policy to which this endorsement is attached is amended so that Section II (A) is amended to include under Section II
(A) 1 "Who Is An Insured" a sub-part which reads as follows:

> Any "trucker" or his or her agents or employees is not an "insured" under this policy for claims resulting from the ownership, maintenance or use of a covered auto owned by anyone other than the "named insured" which is operated pursuant to operating rights granted to anyone other than the "named insured" by a public authority.

The above is a limitation upon coverage that might otherwise be provided for in the policy and shall not be interpreted to extend coverage to any auto, person, bodily injury or property damage not otherwise covered by the policy.

**POLICY NUMBER:** CS SPS 6998001-00

**COMMERCIAL AUTO**
**CA990312 0514**

**THE ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the **Who Is An Insured** Provision of the Coverage Form.  This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below

| Endorsement Effective:  Sep 3, 2025 | Countersigned By: |
|---|---|
| Named Insured:   MISER LOGISTICS LLC | |

## SCHEDULE

| Endorsement Premium: | |
|---|---|

A. **Section II – Who Is An Insured** is amended to include as an "insured" *any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.*

Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that "insured". *A person's or organization's status as an "insured" under this endorsement ends when your operations for that "insured" are complete.*

POLICY NUMBER: CS SPS 6998001-00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**  MISER LOGISTICS LLC |
| **Endorsement Effective Date:** |

**SCHEDULE**

| |
|---|
| **Name(s) Of Person(s) Or Organization(s):** |
| WHERE REQUIRED BY WRITTEN CONTRACT |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Transfer Of Rights Of Recovery Against Others To Us** condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the "accident" or the "loss" under a contract with that person or organization.

**CA 04 44 10 13 Page 1 of 1**

**USDOT Number:** 3996776

Please note, the expiration date as stated on this form relates to the process for renewing the Information Collection Request for this form with the Office of Management and Budget. This requirement to collect information as requested on this form does not expire. For questions, please contact the Office of Registration and Safety Information, Registration, Licensing, and Insurance Division.

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

## Endorsement for Motor Carrier Policies of Insurance for Public Liability
## under Sections 29 and 30 of the Motor Carrier Act of 1980
# FORM MCS-90

**Issued to** MISER LOGISTICS LLC                              **of** OH
*(Motor Carrier name)*                                              *(Motor Carrier state or province)*

**Dated at** 8:00 AM            **on this** Sep 3, 2025

**Amending Policy Number:** CS SPS 6998001-00          **Effective Date:** Sep 3, 2025

**Name of Insurance Company:** Concert Specialty Insurance Company

**Countersigned by:** _____
*(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

◉ his insurance is primary and the company shall not be liable for amounts in excess of $_____750,000_____ for each accident.

○ his insurance is excess and the company shall not be liable for amounts in excess of $_____ or each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA , to verify that the policy is in force as of a particular date. The telephone number to call is: _____.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

**Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.**

*(continued on next page)*

## DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

# SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,001 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,001 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,001 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,001 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

## **EXHIBIT B**

CHANGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number: 8

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CS SPS 6998001-00 | Nov 4, 2025 | Concert Specialty Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MISER LOGISTICS LLC | Specialized Program Solutions |

**COVERAGE PARTS AFFECTED**
Auto Liability

**CHANGES**

In consideration of the additional premium of -$█ it is hereby agreed and understood the policy is amended as follows:

Driver Imina Craig is removed from the policy.

Driver Donald Hampton is added to the policy.

Unit 2022, T680 1XKYDP9X4NJ102438 has been removed from the policy.

Unit 2023, LT62F 3HSDZAPR7PN764194 has been added to the policy.

| TAX TYPE | TAX AMOUNT |
|---|---|
| Technology Fee* | █ |
| Underwriting Fee | █ |
| Safety Advisor Fee* | █ |
| SL Tax | █ |

Authorized Representative Signature